NANCY L. ABELL (SB# 88785)
nancyabell@paulhastings.com
DEBORAH S. WEISER (SB# 167132)
deborahweiser@paulhastings.com
VALERIE M. MAREK (SB# 301540)
valeriemarek@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:    (213) 683-6000
Facsimile:    (213) 627-0705

PAUL W. CANE, JR. (SB# 100458)
paulcane@paulhastings.com
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, California  94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
CHARLES MATTHEW KEEN
and KIM FRANKLIN EBERT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN KNEPPER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., CHARLES MATTHEW KEEN, & KIM FRANKLIN EBERT,<br><br>Defendants. | Case No. 3:18-CV-00303-WHO<br>Case No. 3:18-CV-00304-WHO<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE FILED PURSUANT TO DKT. 63**<br><br>Date:          To be set by the Court (Dkt. 63)<br>Time:          To be set by the Court<br>Courtroom:    2, 17th Floor<br>Complaint filed:    January 12, 2018<br>Trial date:    Not yet set<br>Judge:  Honorable William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. KNEPPER ASSENTED TO ARBITRATION BY NOT OPTING OUT OF
THE MUTUAL ARBITRATION AGREEMENT OGLETREE PRESENTED
TO HER AND BY CONTINUING TO WORK FOR OGLETREE
THEREAFTER ........................................................................................................2

    A.  Knepper Received Notice of Ogletree's Opt-Out Arbitration Program.............2

    B.  After Receiving Notice, Knepper Was Reminded—Twice—Of The
Opportunity To Opt Out Of The Arbitration Agreement, But She Did
Not Do So..........................................................................................................4

III. THE EVIDENCE OF RECORD DEMONSTRATES THE EXISTENCE OF
AN ENFORCEABLE CONTRACT, BUT THE AGREEMENT LAWFULLY
DELEGATES THE ISSUES OF FORMATION AND ENFORCEABILITY
TO THE ARBITRATOR ........................................................................................5

    A.  The Issues Of Formation And Enforceability Are Within The
Arbitrator's Purview.........................................................................................5

    B.  If The Court Proceeds To Decide The Issue, An Enforceable Agreement
Was Formed. .....................................................................................................6

        1.  Ogletree has demonstrated the requisite elements for an
agreement—consent and consideration...................................................7

            a.  Ogletree and Knepper mutually consented to the
Agreement. .................................................................................7

            b.  Legal consideration supports the Agreement.............................9

        2.  The Agreement covers the claims here asserted. .................................10

        3.  The Agreement is not unconscionable. ................................................10

            a.  California's unconscionability test............................................10

            b.  The Agreement is not procedurally unconscionable.................11

            c.  The Agreement is not substantively unconscionable................12

            d.  The Agreement therefore is enforceable...................................13

        4.  The class/collective-action waiver is enforceable................................14

        5.  Absent an appellate ruling to the contrary, the Agreement
excludes the PAGA claim from arbitration...........................................15

IV. CONCLUSION .....................................................................................................15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Alvarez v. AutoZone, Inc.*,
  2015 WL 13427751 (C.D. Cal. July 8, 2015) ................................................. 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .......................................................................... 11, 12, 13

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................ 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) .......................................................................................... 5

*Berkley v. Dillard's Inc.*,
  450 F.3d 775 (8th Cir. 2006) ............................................................................ 9

*Bolter v. Superior Court*,
  87 Cal. App. 4th 900 (2001) ........................................................................... 15

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .......................................................................... 5

*Castro v. Macy's, Inc.*,
  2017 WL 344978 (N.D. Cal. Jan. 24, 2017) ..................................................... 9

*Catamaran Corp. v. Towncrest Pharmacy*,
  864 F.3d 966 (8th Cir. 2017) .......................................................................... 14

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
  809 F.3d 746 (3d Cir. 2016) ........................................................................... 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .......................................................................... 7

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ..................................................................... 7, 11

*Circuit City Stores, Inc. v. Najd*,
  294 F.3d 1104 (9th Cir. 2002) ....................................................... 7, 10, 11, 12

*Cruise v. Kroger Co.*,
  233 Cal. App. 4th 390 (2015) ........................................................................... 7

*Davis v. Nordstrom, Inc.*,
   755 F.3d 1089 (9th Cir. 2014) .................................................................... 7, 10

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) .................................................................................... 10

*DIRECTV, Inc. v. Imburgia*,
   577 U.S. ___, 136 S. Ct. 463 (2015) .......................................................... 7

*Dixon v. Synchrony Fin.*,
   2015 WL 12720290 (N.D. Ga. Aug. 18, 2015) ............................................ 9

*Dotson v. Amgen, Inc.*,
   181 Cal. App. 4th 975 (2010) .................................................................. 9, 13

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ................................................................................ 14

*Ferguson v. Countrywide Credit Indus., Inc.*,
   298 F.3d 778 (9th Cir. 2002) ...................................................................... 7

*Gorlach v. Sports Club Co.*,
   209 Cal. App. 4th 1497 (2012) .................................................................... 8

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981) ................................................................................ 10

*Hick's v. Macy's Department Stores, Inc.*,
   2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) ......................................... 8, 9

*Iskanian v. CLS Transp. L.A., LLC*,
   59 Cal. 4th 348 (2014) .......................................................................... 14, 15

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) .................................................................... 8

*Kilgore v. KeyBank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013) ................................................................ 7, 12

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003) .............................................................................. 13

*Madden v. Kaiser Found. Hosps.*,
   17 Cal. 3d 699 (1976) ................................................................................ 12

*Mohamed v. Uber Technologies, Inc.*,
   848 F.3d 1201 (9th Cir. 2016) .......................................................... 6, 8, 12

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ............................................................. 13

*Oguejiofor v. Nissan*,
  2011 U.S. Dist. LEXIS 99180 (N.D. Cal. Sept. 2, 2011) ......................... 10

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ........................................................................ 10

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ................................................................................ 5

*Roman v. Superior Court*,
  172 Cal. App. 4th 1462 (2009) ............................................................ 15

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal. 4th 394 (1996) ........................................................................ 10

*Sakkab v. Luxottica Retail N. Am., Inc.*,
  803 F.3d 425 (9th Cir. 2015) ........................................................ 14, 15

*Serpa v. Cal. Sur. Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) .............................................................. 14

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th 1109 (2013) ...................................................................... 11

*Strotz v. Dean Witter Reynolds, Inc.*,
  223 Cal. App. 3d 208 (1990) ............................................................... 10

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) ................................................................. 7

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) ................................................................. 7

*Varela v. Lamps Plus, Inc.*,
  701 F. App'x 670 (9th Cir. 2017) ......................................................... 14

**STATUTES**

9 U.S.C.
  § 1 ........................................................................................................ 10
  § 2 ................................................................................................... 7, 15
  § 3 ............................................................................................. 7, 12, 15

28 U.S.C. § 1391(b) ...................................................................................... 1

CAL. CIV. CODE § 1550 ..................................................................................7

CAL. LAB. CODE § 2698.................................................................................15

FEDERAL ARBITRATION ACT
    9 U.S.C. § 1 *et seq*.................................................................................4, 14
    9 U.S.C. § 4 .................................................................................1, 3, 7, 14

**OTHER AUTHORITIES**

https://www.adr.org/sites/default/files/EmploymentRules_Web.pdf.....................................12

1

## I.      **INTRODUCTION**

2

3           Defendant Ogletree, Deakins, Nash, Smoak & Stewart, P.C. demonstrated that the interest of

4    justice is significantly better served by transferring this case to the Central District, Southern Division

5    (Orange County), where Plaintiff Dawn Knepper last worked and a significant number of witnesses

6    reside.  Ogletree further showed that because the Mutual Arbitration Agreement ("Agreement") to

7    which Knepper and Ogletree are parties requires arbitration in or near Orange County, the Central

8    District is the appropriate court for Defendants' petition to compel arbitration under this Circuit's

9    interpretation of the Federal Arbitration Act, 9 U.S.C. ¶ 4 ("FAA").  *See* Dkt. 28 and 36.

10          Knepper's proposed Second Amended Complaint (Dkt. 52) does not change the analysis.

11   Therein she attempts to add four plaintiffs and three defendants who never worked in this District.

12   The only other proposed California Plaintiff is former equity shareholder Tracy Warren, who also

13   was assigned to Ogletree's Orange County office (while maintaining a physical presence in San

14   Diego).  Warren and all other equity shareholders are signatories to the Shareholder Management

15   Agreement ("SMA") and its arbitration article that requires arbitration of her claims in Southern

16   California.  *See* Dkt. 56 (Straky Decl.) ¶ 3.i; Dkt.59-1 (Gicking Decl.) ¶ 2, Exh. A, pg. 32, § 9.04.

17   Three proposed non-California plaintiffs seek to join only claims for breach of fiduciary duty and

18   violation of the Equal Pay Act, but they cannot tether themselves in California to two plaintiffs who

19   cannot litigate those claims in a court because venue for the non-California plaintiffs on their claims

20   lies in Texas or Colorado.  *See* 28 U.S.C. section 1391(b) (venue proper in a judicial district in which

21   a substantial part of the events or omissions giving rise to the claim occurred).  *See* Dkt. 59, at 1:9 –

22   2:28 and 7:1 – 8:17.

23          In response to the Court's request, this supplemental brief, demonstrating that an Agreement

24   was formed between Knepper and Defendants to arbitrate her claims, is submitted without waiving

25   Defendants' rights (i) to compel arbitration in the Central District in accordance with the Federal

26   Arbitration Act ("FAA"), 9 U.S.C. § 4 (hearing "shall be within the district in which the petition . . .

27   is filed"), and (ii) to preserve Defendants' argument that the Agreement delegates the issues of

28   formation and enforceability to the arbitrator.

II.   **KNEPPER ASSENTED TO ARBITRATION BY NOT OPTING OUT OF THE**
      **MUTUAL ARBITRATION AGREEMENT OGLETREE PRESENTED TO HER AND**
      **BY CONTINUING TO WORK FOR OGLETREE THEREAFTER**

    A.   **Knepper Received Notice of Ogletree's Opt-Out Arbitration Program.**

Knepper has practiced law for nearly 18 years, 13 as an employment-law litigator at Ogletree. 1st Am. Compl. (Dkt. 33) ¶¶ 62-63, 67-68, 96, 98.

On January 15, 2016, Ogletree sent a notice to Knepper, all non-equity shareholders, all other attorneys (other than equity shareholders covered by their SMA) and all staff at their Firm e-mail addresses. The notice explained and attached two documents: (1) Ogletree's Open Door Policy and (2) a Mutual Arbitration Agreement ("Agreement"). Dkt. 28-2 (Straky Decl.) ¶ 4, Exhs. A-C; Dkt. 28-1 (Berger Decl.) ¶ 3, Exh. A. The notice and attached Open Door Policy (which was "effect[ive] immediately") explained that, in the event a dispute could not be resolved internally, Ogletree's arbitration program would apply to any future claims recipients might bring against Ogletree and/or any of its "shareholders, directors, employees, or agents" (or that Ogletree might bring against any of them), if they: (1) continued to work for Ogletree, and (2) did not opt out of the program within six weeks (that is, by March 1, 2016). The notice itself summarized the key provisions of the Agreement as follows:

- Both you and the Firm are agreeing to the arbitration of any disputes (with certain limited exceptions) before a neutral arbitrator.[1] This means that both parties agree to waive their right to a trial in a court before either a judge or a jury.
- The arbitration will be administered by the American Arbitration Association, a respected national provider of dispute-resolution services.
- The arbitrator has the same authority as a judge would have to award relief to individual claimants based on applicable laws and regulations.
- It is a mutual agreement, and it is a binding contract.
- Ogletree Deakins pays the costs of the arbitrator and the arbitration agency in excess of whatever the filing fee for filing a case in court would have been.
- Each party would pay his/her/its own attorney's fees, though the arbitrator would have the same right as a judge to award costs and fees to the prevailing party.

Dkt. 28-2 (Straky Decl.) ¶ 5, Exh. A, pgs. 1-2. The notice further explained that the "attached Mutual

---

[1] The first section of the Agreement provides: "Mutual Agreement to Arbitrate. Except as provided below, the Parties agree that all disputes between them, including without limitation those relating to employment with the Firm or separation therefrom (*and also including claims against any of the Firm's . . . shareholders*, directors, employees, or agents and against any alleged joint employers) shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein." Dkt. 28-2 (Straky Decl.) ¶ 4, Exh. C, pg.1, § 1 (emphasis added).

Arbitration Agreement is an important legal document and [the recipient] may wish to seek guidance from private legal counsel." *Id.* at pg. 2. It also informed recipients that Ogletree's Director of Human Resources would be available to answer any questions about the Agreement. *Id.*

Recipients saw in *three* separate places that they would be bound by the Agreement if they did not follow the opt-out instructions. First, the notice stated:

> You have the right to opt out of the arbitration program if you wish. To do so, you must sign an Opt-Out form and return it to Kay Straky, the Firm's Director of Human Resources via email to Kay.Straky@ogletreedeakins.com, on or before March 1, 2016. The Opt-Out form is available under the "Resources" tab on the OD Connect homepage of the Firm's Human Resources Department. *If you do not return an Opt-Out form by March 1, 2016 and remain employed by the Firm after that date, you will be deemed to have accepted the terms of the Agreement.*

*Id.* (emphasis added).

Second, the Agreement itself restated the instructions for opting out and repeated that failure to do so by March 1, 2016, and continuing to work, constituted acceptance of the Agreement:

> 11. <u>Opt Out</u>. Individual may opt out of this Agreement by delivering a completed and signed Opt-Out Form to the Director of Human Resources on or before March 1, 2016. Opt-Out Forms and instructions on how to return them are available on the OD Connect home page of the Human Resources Department, under the "Resources" tab. *Failure to deliver an executed Opt-Out Form on or before March 1, 2016, and continued employment with the Firm after that date, shall be deemed acceptance of the terms of this Agreement.*

*Id.*, Exh. C, pg. 2, ¶ 11 (emphasis added).

Third, the Open Door Policy informed employees that the Agreement "is a separate and binding contract between the Firm *and all employees who have not elected to opt out of it during the applicable opt-out period.*" *Id.*, Exh. B (emphasis added).

Recipients were requested to acknowledge their understanding of the above. The cover e-mail stated:

> ***Please sign and return a copy of the Mutual Arbitration Agreement to your Office Administrator. Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.***

*Id.*, Exh. A, pg. 2 (emphasis in original). The Agreement further stated:

> ***Special Note***: *This Agreement is an important document that affects your legal rights. You should familiarize yourself with it. By signing below, you acknowledge that you understand you have the option to opt out of this Agreement by returning an Opt Out form to the Director*

*of Human Resources on or before March 1, 2016 and that failure to return an Opt Out form and remaining in the employment of the Firm after that date will be deemed an acceptance of this Agreement.*

*Id.*, Exh. C., pg. 2 (emphasis in original).

The Agreement specifically acknowledges that it "is made in the course of interstate commerce [and] that any arbitration under this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*"  Dkt 28-2 (Straky Decl.), Exh. C, pg. 2, § 9.

## B. After Receiving Notice, Knepper Was Reminded—Twice—Of The Opportunity To Opt Out Of The Arbitration Agreement, But She Did Not Do So.

Knepper claims that she did not know Ogletree had sent her an arbitration agreement.  Case No. 3:18-CV-00304-WHO, Dkt. 1, ¶ 32.  Irrefutable evidence proves otherwise.

Knepper's email account at the time ("Dawn.Knepper@ogletreedeakins.com") received the notice and attachments on January 15, 2016, at 4:47 a.m.  Dkt. 28-1 (Berger Decl.) ¶¶ 3-6, Exh. B; Dkt. 28-2 (Straky Decl.) ¶ 4.  The "read receipt" message from Knepper's email account shows it was opened that day, at 6:32 a.m.  Dkt. 28-1 (Berger Decl.) ¶ 6, Exh. C.

On January 27, 2016, Vicki Myers, the Office Administrator for the Orange County office, forwarded the January 15, 2016 email and attachments (Straky Decl. Exhibits A-C) to all original recipients in that office (including Knepper).  The email, entitled "Mutual Arbitration Agreement," stated:

> If you haven't already done so, please sign and return a copy of the Mutual Arbitration Agreement to me as soon as possible.  Also, please print your name under your signature to ensure that HR files your document in the correct HR file.  As indicated below:  Signing the Agreement signifies that you understand you have the option to opt out and that *if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.  You have the right to opt out of the arbitration program if you wish.  To do so, please read the instructions in the email below.*

Dkt. 28-3 (Myers Decl.) ¶ 4, Exh. A (emphasis added).  This was the *fourth* notification Knepper received advising her she would be bound by the Agreement unless she opted out.

On March 1, 2016 at 3:41 p.m., Myers sent still another email, entitled "FW:  Mutual Arbitration Agreement," containing the same text and attachments, adding a reminder that the signed acknowledgements of understanding should be sent in that day.  Dkt. 28-3 (Myers Decl.) ¶ 5, Exh. B.  This was the *fifth* notification Knepper received.  Within five minutes of issuance of the March 1 reminder, Knepper responded to Myers' email, stating, "I will turn mine in tomorrow."  Dkt. 28-3

(Myers Decl.) ¶ 6, Exh. C; Dkt. 28-1 (Berger Decl.) ¶ 9, Exh. F.  On July 11, 2017—more than a year after she first received the Arbitration Agreement and more than six months before she filed these related actions—Knepper forwarded a copy of the original email, the Arbitration Agreement, and the other attachment to her personal email account:  dmknepper@gmail.com.  Dkt. 28-1 (Berger Decl.) ¶ 10, Exh. G.

Knepper falsely contends, contrary to documented facts and her own email, that she had "no knowledge of [the Agreement's] existence until well after the deadline the Firm gave to opt out."  Case No. 3:18-cv-00304, Dkt. 1, at 5:8-10.  Her position forecloses any contention she timely opted out.

## III.   THE EVIDENCE OF RECORD DEMONSTRATES THE EXISTENCE OF AN ENFORCEABLE CONTRACT, BUT THE AGREEMENT LAWFULLY DELEGATES THE ISSUES OF FORMATION AND ENFORCEABILITY TO THE ARBITRATOR

### A.   The Issues Of Formation And Enforceability Are Within The Arbitrator's Purview.

Even gateway issues may be delegated to the arbitrator where "the parties clearly and unmistakably [so] provide."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *accord Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 79 (2010) (where an agreement contains a clear and unmistakable" delegation provision and plaintiff alleges the entire agreement is invalid, the arbitrator shall decide the issues, except where plaintiff challenges the delegation provision itself).

The Agreement here expressly delegated to the arbitrator all enforceability issues except the enforceability of the provision (discussed below) waiving participation in class and collective actions.  The Agreement provides:

> Section 6:  Authority of the Arbitrator.  Except as provided below, *the arbitrator shall have the authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that the Agreement is void or voidable*.  The arbitrator shall not have the authority to hear disputes not recognized by existing law and shall dismiss such claims upon motion by either Party in accordance with the standards and burdens generally applicable in federal district court.
>
> Because this Agreement is intended to resolve the particular dispute as quickly as possible, *the arbitrator shall not have the authority to consolidate the claims of other individuals into a*

*single proceeding, to fashion a proceeding as a class, collective action, or representative action*, or to award relief to a class or group of claimants.  Notwithstanding anything herein or in AAA's rules to the contrary, *any dispute relating to the interpretation, applicability, or enforceability, of this paragraph shall be resolved by a court only and shall not be within the power of the arbitrator to resolve.*

Dkt. 28-2 (Straky Decl.) Exh. C, Section 6, at pgs. 1-2 (emphasis added).

The delegation clause here is valid and fully enforceable.  The Ninth Circuit's decision in *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) is controlling.  Uber's arbitration agreement, like the Agreement here, delegated to the arbitrator all arbitrability challenges, except for challenges to the waiver of class and collective actions.[2]  Just as Knepper argues in her RDJ (¶¶ 46-47), the district court in *Mohamed* found the delegation to the arbitrator was inconsistent with the carve-out provision for representative claims.  *Id*. at 1209.  The Ninth Circuit disagreed:

These conflicts are artificial.  *The clause describing the scope of the arbitration provision was prefaced with "[e]xcept as it otherwise provides*," which eliminated the inconsistency between the general delegation provision and the specific carve-out . . . .

*Id*. (emphasis added).  In sum, the Ninth Circuit found that the delegation language constituted a lawful "clear and unmistakable" delegation to the arbitrator of most enforceability issues.  *Id*.

The same result must follow here.  The Agreement before this Court does exactly what Uber's agreement did:  delegate all formation and enforceability issues to the arbitrator, except those pertaining to the waiver of any right to participate in class and collective actions.  Knepper assented to the Agreement and its delegation clause by failing to opt out.

### B.    If The Court Proceeds To Decide The Issue, An Enforceable Agreement Was Formed.

Defendants brief the following issues in response to the Court's request, without waiving their position that formation and enforceability issues are reserved for an arbitrator, the case should be transferred to the Central District, and they should have the opportunity to file in that District their petition for an order compelling arbitration in Orange County consistent with the Parties' Agreement.

---

[2] Uber's agreement assigned to the arbitrator "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." 848 F.3d at 1208.  It preserved for the court "any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable." *Id.*

1.   **Ogletree has demonstrated the requisite elements for an agreement—consent and consideration.**

When determining whether a valid contract to arbitrate exists, a federal court applies ordinary state-law principles that govern contract formation. *DIRECTV, Inc. v. Imburgia*, 577 U.S. ___, 136 S. Ct. 463, 473 (2015) (reversing a California state court that had failed to do so); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).  Arbitration agreements are presumed to be valid; the party seeking to avoid arbitration bears the burden of demonstrating otherwise. *See, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Under California law, a contract requires (1) the parties' consent and (2) consideration. CAL. CIV. CODE § 1550; *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Both of these prerequisites are met here.

a.   **Ogletree and Knepper mutually consented to the Agreement.**

Ogletree demonstrated its consent by presenting the Agreement to Knepper, using Ogletree's resources and e-mail accounts, and by stating in the Agreement Ogletree's intent to be bound thereby. *See, e.g., Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 397-99 (2015) (employer was bound where arbitration agreement was on company letterhead and contained language agreeing to mandatory final and binding arbitration); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer was bound to arbitration based on an arbitration agreement it prepared and presented).

The FAA requires only a "written provision" to arbitrate, not a signature.  9 U.S.C. § 2; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) ("Although § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed.").  The Ninth Circuit repeatedly has held that, by not opting out of an arbitration program, employees manifest their assent to be bound, even without the employee's signature.  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (plaintiff did not opt out, so he thereby became bound).[3]  Knepper demonstrated her intent to

---

[3] *See also Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (same); *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059 (9th Cir. 2013) (*en banc*) (*citing Ahmed*; the loan agreement at issue was enforceable because borrowers did not have to accept it and had a right to opt out);

*(Continued . . . )*

be bound by remaining employed and not opting out by the March 1, 2016 deadline.

Knepper's contention that she did not sign the acknowledgement of receipt does not help her. Ogletree asked recipients to sign to confirm receipt. *Continuing to work* (without opting out) is the manifestation of assent (as the cases above teach); no signature was necessary.

The absence of a signature would have significance if the signature were necessary to accept the offered agreement. *See, e.g.*, *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1507-11 (2012) (employer sought a signature as the manifestation of assent; there was no agreement because the plaintiff chose not to sign). Unlike the employer in *Gorlach*, Ogletree did not seek signatures as the manifestation of consent, instead utilizing the routinely accepted opt-out approach to forming arbitration agreements without need for signature. With respect to Knepper, Ogletree has proven receipt without the signature, through the documentary proof above, including Knepper's own e-mail acknowledging receipt of Myers' email entitled "FW:  Mutual Arbitration Agreement":

| | |
|---|---|
| From: | Knepper, Dawn M. |
| Sent: | Tuesday, March 1, 2016 3:46 PM |
| To: | Myers, Vicki J. |
| Subject: | RE: Mutual Arbitration Agreement |

I will turn mine in tomorrow.  Thanks.

Dawn M. Knepper | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Park Tower, 695 Town Center Drive, Suite 1500 | Costa Mesa, CA 92626 | Telephone: 714-800-7938 | Fax: 714-754-1298
dawn.knepper@ogletreedeakins.com | www.ogletreedeakins.com | Bio
*Board Certified - Labor and Employment Law - Texas Board of Legal Specialization

Cases show that Ogletree's implementation of the Agreement was sound. Courts regularly find an arbitration agreement binding even where an unsophisticated employee-plaintiff had not signed the form acknowledging receipt of an opt-out provision. For example, in *Hick's v. Macy's Department Stores, Inc.*, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006), the court found the plaintiff

---

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("the existence of a meaningful right to opt-out" produces an enforceable agreement) (citation and internal quotation marks omitted); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("By not opting out within the 30 day period, [plaintiff] became bound by the terms of the arbitration agreement.").

had agreed to the agreement because (1) he had a reasonable amount of time to decide whether to opt

out; (2) the documents mailed to him clearly set forth the consequences of not opting out; and (3) he

was told that his employment would not be affected by a decision to opt out. *Id*. at *2. Plaintiff

argued that he had not signed to acknowledge receipt, but the court found the employer had proved

receipt in other ways. *Id*. The court noted that "[t]he adequacy of Macy's notice is further

demonstrated by the ten percent of employees who received the same material as plaintiff and did opt

out." *Id*. Ogletree will present similar evidence of its opt-out rate when it files its petition to compel

arbitration.

Last year, *Castro v. Macy's, Inc*., 2017 WL 344978 (N.D. Cal. Jan. 24, 2017), reached the

same conclusion, stating:

> Castro's argument that her failure to sign an acknowledgment form renders the arbitration
> agreement invalid with regards to her civil rights claims is misguided. . . .  The circumstances
> here permit the Court to find that Castro knowingly agreed to an arbitration policy that
> provided Castro a clear choice — submit the Opt Out Form or waive the right to a judicial
> forum for civil rights claims.

*Id*. at *4.[4]

As a seasoned employment attorney, Knepper cannot credibly argue that she did not

understand the Agreement or its opt-out instructions. *See, e.g.*, *Dotson v. Amgen, Inc.*, 181 Cal. App.

4th 975, 981 (2010) (granting motion to compel arbitration, noting that the plaintiff "is not an

uneducated, low-wage employee without the ability to understand that he was agreeing to arbitration.

He was the opposite, a highly educated attorney . . . .").

### b.   Legal consideration supports the Agreement.

Ogletree, too, was bound to arbitrate any claims it might have had against Knepper.  The

---

[4] *See also, e.g.*, *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006) (affirming order
compelling arbitration where plaintiff refused to sign a form containing a signature line above which
it stated that employees were deemed to have agreed to arbitration program rules by accepting or
continuing employment); *Dixon v. Synchrony Fin.*, 2015 WL 12720290, at *2-3, *5  (N.D. Ga. Aug.
18, 2015) (granting motion to compel arbitration where employee refused to sign acknowledgement
of receipt of information regarding arbitration program; "Plaintiff was informed of the manner by
which an employee accepted the terms of the Solutions procedure, that is, continued employment
after July 1, 2009, and, being aware, that Plaintiff accepted the terms of Solutions by remaining
employed. *Her refusal to acknowledge receipt of the information or to execute any agreement is
immaterial to resolution of the pending motion*.") (emphasis added).

1   Agreement covers "all disputes between them," including without limitation those relating to employment

2   or affiliation with the Firm. Dkt. 28-2 (Straky Decl.) ¶ 4; Exh. C, pg. 1, § 1. Therefore, "the parties'

3   mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for

4   each other." *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other*

5   *grounds by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996); *accord Najd*, 294 F.3d at 1108

6   (employer's promise to be bound by the arbitration process supplies adequate consideration); *Oguejiofor*

7   *v. Nissan*, 2011 U.S. Dist. LEXIS 99180, at *8-9 (N.D. Cal. Sept. 2, 2011) (Chen, J.) (same). All of the

8   requirements for a valid contract under California law have been met.

9   ### 2.   The Agreement covers the claims here asserted.

10   A court addressing a motion to compel arbitration must decide as a gateway issue "whether

11   the agreement encompasses the dispute at issue." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th

12   Cir. 2014) (citing *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057-58 (9th Cir. 2013) (*en banc*)). Here

13   it does. The Agreement explicitly requires "final and binding arbitration" of "*all disputes* between

14   [Knepper and Defendants Firm and shareholders], *including without limitation those relating to*

15   *employment with the Firm* or separation therefrom." Dkt. 28-2 (Straky Decl.) ¶ 4, Exh. C, pg. 1

16   (emphasis added). Every count in the First Amended Complaint relates to employment with

17   Ogletree. Counts 1 through 6 address discrimination, *inter alia*, in compensation and/or promotion under

18   myriad federal and state statutes; count 7 alleges for breach of fiduciary duty arising from such alleged

19   discrimination; and counts 9 and 10 allege retaliation for exercising rights to object to such employment

20   discrimination. 1st Am. Compl. (Dkt. 33) ¶¶ 174-258 at pp. 30: 16 – 41:25. Where a dispute falls

21   within the scope of an agreement to arbitrate, the FAA requires the district court to direct the parties

22   to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

23   ### 3.   The Agreement is not unconscionable.

24   #### a.   California's unconscionability test.

25   Unconscionability is an affirmative defense to the enforcement of a contract. *Graham v.*

26   *Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981). "The party resisting arbitration bears the burden of

27   proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.

28   4th 223, 247 (2012); *see also Rosenthal*, 14 Cal. 4th at 413 ("If the party opposing the petition raises

a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense.").

Unconscionability has both a substantive and a procedural element.  An agreement to arbitrate is unenforceable only where *both* substantive and procedural unconscionability exist; it is not enough that one may exist without the other.  *See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (both forms of unconscionability must be present to defeat contract formation).  As the California Supreme Court reiterated, "The unconscionability inquiry is not a license for courts to impose their renditions of an ideal arbitral scheme."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013).  "[C]ourts may not decline to enforce an arbitration agreement simply on the ground that it appears to be a bad bargain or that one party could have done better."  *Id.*  As shown below, the Agreement is neither procedurally nor substantively unconscionable, and certainly not both.

### b.   The Agreement is not procedurally unconscionable.

The Ninth Circuit repeatedly has held that opt-out arbitration agreements have *zero* procedural unconscionability, because the employee has the right to reject arbitration and retain his or her job.  In *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), Circuit City offered a predispute arbitration program to Ahmed and other incumbent employees one month after he started working.  The employees were free to agree to arbitration or opt out of coverage.  If Ahmed had decided to opt out, he would have kept his job.  *Id.* at 1199.  Ahmed did not opt out, so he thereby became bound.  When Ahmed later asserted a claim for employment discrimination, Circuit City moved to compel arbitration.  The district court granted Circuit City's motion, and the Ninth Circuit affirmed.  The opt-out arbitration agreement was a preprinted form, and its specific terms were nonnegotiable.  That, however, was not the point, the court explained.  "[T]his case lacks the necessary element of procedural unconscionability" because Ahmed was free to accept or reject the deal and still keep his job.  *Id.*

*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002), is identical.  Najd, an incumbent employee who did not opt out, contended that his arbitration agreement was unconscionable.  "Najd's contention is foreclosed by our recent decision in . . . *Ahmed*," the court held.  *Id.* at 1108.  The agreement was a preprinted form, but it was "not . . . procedurally unconscionable" because Najd was free to reject it.

1   *Id.* "Circuit City made clear that . . . [it] would have no effect on the employment relationship" if Najd

2   chose not to make the deal. *Id.* at 1109.

3         The Ninth Circuit *en banc* reaffirmed the rule in those cases in 2013. *Kilgore v. KeyBank, N.A.,*

4   718 F.3d 1052, 1059 (9th Cir. 2013) (en banc) (citing *Ahmed*; the loan agreement at issue was not

5   procedurally unconscionable because borrowers did not have to accept it and had a 60-day right to opt

6   out). Most recently, in *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016), the court

7   found no procedural unconscionability where there is a right to opt-out of arbitration. These cases are

8   dispositive here. Knepper had her job with Ogletree and could have retained it even if she had opted out;

9   she was totally free to accept or reject the Arbitration Agreement. Nor does any alleged failure by

10  Knepper to read the terms of the Agreement render it procedurally unconscionable. *See Madden v.*

11  *Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976).

12            **c.**    **The Agreement is not substantively unconscionable.**

13        Even if (erroneously, in Ogletree's view) the appropriate tribunal perceives some trace of

14  procedural unconscionability, the Agreement still is enforceable because there is no substantive

15  unconscionability. *Armendariz* held that, for an employment arbitration agreement to be enforceable,

16  it must meet certain "minimum requirements" to ensure that substantive rights afforded by statute are

17  not waived. Specifically, an arbitration agreement is enforceable if it provides for: (i) a neutral

18  arbitrator; (ii) a written decision subject to limited judicial review; (iii) payment by the employer of

19  all costs unique to arbitration; (iv) adequate discovery; and (v) recovery of all statutory remedies.

20  24 Cal. 4th at 90-91, 103-13. The Agreement meets all of those requirements.

21        *First*, the Agreement provides for a neutral arbitrator by incorporating the American

22  Arbitration Association's ("AAA") Employment Arbitration Rules ("EAR"). Dkt. 28-2 (Straky

23  Decl.), ¶ 4, Exh. C, pg. 1, § 3. *See* Defendants' Request for Judicial Notice of AAA EAR, Rule 12(c)

24  (providing mechanism for parties to select neutral arbitrator by mutually striking potential arbitrators

25  from an AAA list). https://www.adr.org/sites/default/files/EmploymentRules_Web.pdf.

26        *Second*, the Agreement expressly provides that "[t]he arbitrator shall render a written award

27  setting forth his or her findings of fact and conclusions of law." Dkt. 28-2, ¶ 4, Exh. C, pg. 2, § 7. *See*

28  *also* AAA EAR, Rule 39(c) mandating that awards consist of "the written reasons for the award."

1

2

3

*Third*, the Agreement expressly provides that Ogletree "will pay all costs unique to arbitration (as compared to the costs of adjudicating the same claims before a court . . .), including the regular and customary arbitration fees and expenses charged by AAA." Dkt. 28-2, ¶ 4, Exh. C, pg. 1, § 5.

4

5

6

7

8

9

*Fourth*, the Agreement permits Arbitration Plaintiffs to recover all otherwise-available remedies, by incorporating AAA EAR Rule 39(d) and further providing that "[t]he arbitrator shall have the same authority to order remedies to individual claimants as would a court of competent jurisdiction." Dkt. 28-2, ¶ 4, Exh. C, pg. 1, § 6. Since "nothing in the language of the [Agreement] limits remedies," "no limitation should be implied." *See Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1075 n.1 (2003).

10

11

12

13

14

15

16

17

18

19

20

*Fifth*, the Agreement provides for adequate discovery. *Armendariz* requires that an arbitration agreement provide for "discovery sufficient to adequately arbitrate . . . including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." 24 Cal. 4th at 106. Here, the Agreement contains no limitations on the methods of discovery available to the parties, noting that "[t]he arbitrator shall have the authority to . . . compel the production of documents during discovery." Dkt. 28-2, ¶ 4, Exh. C, pg. 2, § 6. *See also* AAA EAR Rule 9 (providing the arbitrator with broad authority to order discovery "as the arbitrator considers necessary to a full and fair exploration of the issues in dispute." The Agreement's discovery rules thus are fully consistent with *Armendariz*. *See, e.g.*, *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 982-85 (2010) (reversing trial court and compelling arbitration; the agreement set forth limits on discovery, but allowed the arbitrator to grant more on an appropriate showing of need).

21

### d.   The Agreement therefore is enforceable.

22

23

24

25

26

27

28

If the appropriate tribunal concludes, as it should, that at least one form of unconscionability is wholly absent, the Agreement is enforceable without more. Alternatively, the Agreement should be enforced even if (erroneously, in Ogletree's view) the appropriate tribunal found both forms of unconscionability to be present. The tribunal's task "is not only to determine *whether* . . . unconscionability exists, but more importantly, *to what degree* it may exist." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005) (emphasis in original). Where there is minimal procedural unconscionability, the party opposing arbitration must show a high level of

1    substantive unconscionability (or vice versa). *E.g.*, *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal.

2    App. 4th 695, 704 (2013) ("When . . . the degree of procedural unconscionability of an adhesion

3    agreement is low, . . . the agreement will be enforceable unless the degree of substantive

4    unconscionability is high.'") (citation omitted).

5        The Agreement is not unconscionable at all, but even assuming otherwise *arguendo*, it should

6    be enforced under California's sliding-scale test.

7                    **4.    The class/collective-action waiver is enforceable.**

8        The Agreement expressly contains a class/collective-action waiver (collectively, "class-action

9    waiver"). It excludes from arbitration "consolidat[ion] [of] the claims of other individuals into a

10   single proceeding," "a class, collective action, or representative action," and an award of relief "to a

11   class or group of claimants." Dkt. 28-2 (Straky Decl.), ¶ 4, Exh. C, pg. 2, § 6.

12       The United States Supreme Court and California Supreme Court both have ruled that class

13   action waivers are enforceable and that federal law preempts any state law to the contrary.[5] *See, e.g.,*

14   *Epic Sys. Corp. v. Lewis*,138 S. Ct. 1612, 1619 (2018) ("In the [FAA], Congress has instructed

15   federal courts to enforce arbitration agreements according to their terms—including terms providing

16   for individualized proceedings.").[6]

17

18   ────────────────

19   [5] Whether this class-action waiver is enforceable is a gateway question of arbitrability for a court to
     decide. *See, e.g.*, *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 971-73 (8th Cir. 2017)

20   (Absent a clear and unmistakable delegation to the arbitrator, "the question of class arbitration
     belongs with the courts as a substantive question of arbitrability."; *Chesapeake Appalachia, LLC v.*
     *Scout Petroleum, LLC*, 809 F.3d 746, 754, 756, 758, 761 (3d Cir. 2016) (same).

21     The Ninth Circuit in *Varela v. Lamps Plus, Inc*., 701 F. App'x 670 (9th Cir. 2017), without
     discussion followed these cases, treating the class-action issue as a gateway question for the court.

22   The Supreme Court granted *certiorari* in *Lamps Plus* (No. 17-988), perhaps because the Court
     disagreed with the Ninth Circuit's construction of the agreement to permit class actions. But the

23   grant of *certiorari* did not encompass whether the issue is a gateway question of arbitrability for a
     court to decide in the first instance.

24   [6] *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (the FAA preempts any
     California public policy against class-action waivers, because state law cannot "stand[] as an

25   obstacle" to enforcing arbitration agreements "according to their terms"); *Iskanian v. CLS Transp.*
     *L.A., LLC*, 59 Cal. 4th 348, 366 (2014) (the "FAA preempts the *Gentry* rule."); *Sakkab v. Luxottica*

26   *Retail N. Am., Inc.*, 803 F.3d 425, 450 (9th Cir. 2015) ("A state may not insulate causes of action
     from arbitration by declaring that the purposes of the statute can only be satisfied via class,

27   representative, or collective action. If the rule conflicts with the objectives of the FAA, the state rule
     must give way.").

28

1

2

     **5.**       **Absent an appellate ruling to the contrary, the Agreement excludes the PAGA claim from arbitration.**

3

     It is true, of course, that under the current state of the law, a waiver of representative claims

4

under the California Private Attorneys General Act ("PAGA") is deemed unenforceable and not

5

FAA-preempted. *Iskanian*, 59 Cal. 4th at 384, 388-89; *Sakkab*, 803 F.3d at 439. As such, the PAGA

6

claim asserted as count 8 here is excluded *at this time* from coverage by the Agreement, which

7

provides in Section 2 that "disputes and actions excluded from this Agreement are . . . claims for

8

which this Agreement would be invalid as a matter of law."[7] The Court ruling on the petition to

9

compel could reach the same result by applying the severability clause in Section 12 of the

10

Agreement to sever the PAGA claim (*i.e.*, the words ("or representative action") in Section 6 as a matter

11

of law and enforcing the remainder in full. Dkt. 28-2 (Straky Decl.), Exh. C, pg. 2, §6.[8]

12

     The PAGA claim will remain stayed until arbitration is completed. 9 U.S.C. § 3; *Alvarez v.*

13

*AutoZone, Inc.*, 2015 WL 13427751, at *2-3 (C.D. Cal. July 8, 2015) (staying PAGA claim pending

14

arbitration of individual claims circumvents simultaneous and duplicative litigation).

15

**IV.**   **CONCLUSION**

16

     At the August 15 hearing, the Court indicated that "[i]f it looks like there is an agreement, I'm

17

going to send the case down to my fine colleagues in the Central District." Dkt. 65 at 7:9-11.

18

Defendants have made the requisite showing. The motion to transfer should be granted.

19

DATED:  August 29, 2018         PAUL HASTINGS LLP

20

                    By:  /s/ Nancy L. Abell

21

                       Nancy L. Abell
                       Attorneys for Defendants

22

                       OGLETREE, DEAKINS, NASH, SMOAK &
                       STEWART, P.C., CHARLES MATTHEW KEEN and
                       KIM FRANKLIN EBERT

23

24

---

[7] Defendants reserve the right to contend that the PAGA-representative-action waiver is in fact itself

25

FAA-protected, if and when the U.S. Supreme Court overrules *Iskanian* and *Sakkab*. For now, however, Ogletree recognizes that the court that rules on its petition to compel arbitration will apply the *Iskanian/Sakkab* rule.

26

[8] California law disfavors "throw[ing] [the arbitration] baby out with the bath water." *Bolter v.*

27

*Superior Court*, 87 Cal. App. 4th 900, 910 (2001). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement . . . ." *Roman v. Superior*

28

*Court*, 172 Cal. App. 4th 1462, 1477 (2009).